**SIGNED this 30th day of September, 2021**

*Shelley D. Rucker*
_____
Shelley D. Rucker
CHIEF UNITED STATES BANKRUPTCY JUDGE

_____

## IN THE UNITED STATES BANKRUPTCY COURT FOR
## THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **Brian Ashley Pritchard,** | ) | **No. 1:20-bk-13207-SDR** |
| | ) | **Chapter 7** |
| Debtor; | ) | |
| _____ | ) | |
| | ) | |
| **Nathanel Jordan and Rachel Jordan,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Adv. No. 1:21-ap-01010-SDR** |
| | ) | |
| **Brian Ashley Pritchard,** | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANUM OPINION</u>

## I.    INTRODUCTION

In the summer of 2018, plaintiffs Nathanael Jordan and Rachel Jordan bought a house

from defendant Brian Pritchard ("Pritchard"), the debtor in Main Case No. 1:20-bk-13207-SDR.

Soon after buying the house, the Jordans discovered that it had a leaky roof, mold in the

basement, and other structural problems that they contend they could not have discovered before

the sale closed.  The Jordans, in their view, could not have discovered all of the problems with the house in large part because Pritchard gave them a property condition disclosure statement that either downplayed the severity of the problems or denied them outright.  Making any recovery for the Jordans' injuries more difficult, Pritchard transferred his interest in a different property while going through his Chapter 7 proceedings; the Jordans believe that he did so intentionally to thwart their attempts to recover damages.  The Jordans commenced state-court litigation, currently stayed by the state court, and this adversary proceeding to unwind the property transfer and to seek compensation for extensive repairs to the house that they bought. The Jordans additionally seek declarations that any damages that they recover would not be subject to discharge under 11 U.S.C. § 523(a)(2)(A); and that Pritchard should not receive any discharge in the Main Case under 11 U.S.C. § 727(a)(2)(A) and (B).

In response to the Jordans' first amended complaint, Pritchard filed a motion to dismiss under Federal Civil Rule 12(b)(6), made applicable by Federal Bankruptcy Rule 7012.  (Doc. No. 8.)  Pritchard argues that the Jordans have not pled any fraudulent statements or failure to disclose with respect to his property transfer.  Pritchard argues further that the Jordans arranged for a home inspection before buying their house and could have discovered any problems before closing, leaving them with only conclusory allegations about misrepresentations.

The Court held oral argument on May 28, 2021.  For the reasons below, the Court grants Pritchard's motion with respect to Count I of the first amended complaint and denies it, without prejudice, with respect to Count II.  The Court denies Pritchard's motion with respect to Count III.

## II.    BACKGROUND

This case concerns allegations[1] that Pritchard deceived the Jordans about the condition of

the house that he and his first ex-wife Jennifer sold them in 2018.  The house that Pritchard sold

is located at 1301 Harrison Pike in Cleveland, Tennessee.  The Jordans purchased the house for

$150,000.  (Doc. No. 9-1 at 3.)  The parties recorded the sale on August 13, 2018 with the filing

of a warranty deed.  (*Id.* at 1–2.)

The sale of the Harrison Pike property closed in accordance with a Purchase and Sale

Agreement (the "Agreement") that the parties entered in early July 2018.[2]  The Agreement

contains several provisions that are relevant to the pending motion.  In Section 2(C)(2), the

parties agreed that the sale would be contingent on an appraisal that set a value for the house at

least as high as the purchase price.  (Doc. No. 3-1 at 15.)  In Section 7(A), a home inspection was

optional, but the Jordans agreed that any third-party home inspection would be conducted by a

licensed home inspector.  (*Id.* at 17.)  In the same section, the Jordans agreed that they had "no

right to require repairs or alterations purely to meet current building codes, unless required to do

so by governmental authorities."  (*Id.*)  Section 7(B) contains a paragraph governing how a home

inspection would occur:

> Buyer and/or his inspectors/representatives shall have the right and
> responsibility to enter the Property during normal business hours, for the purpose

---

[1] For the sake of brevity and consistent with Rule 12(b)(6), the Court will avoid repeated use of the words "alleged" or "allegedly."  Nothing in this Background section constitutes a finding of fact unless otherwise noted.

[2] The Court does not appear to have a final copy of the Agreement.  The copy of the Agreement in the record shows that the Jordans signed it digitally on July 7, 2018 as their offer.  (Doc. No. 3-1 at 22.) Pritchard signed the Agreement on July 8, 2018 but checked off a box with his signature that reads, "COUNTERS— accepts this offer subject to the attached Counter Offer(s)."  (*Id.*)  Nothing is attached to the Agreement that would elaborate on what counter-offer Pritchard might have made.   Nonetheless, the parties have raised no issues with the copy of the Agreement in the record.  The Court thus will assume that the copy of the Agreement in the record is identical to any subsequent final version in all respects relevant to the pending motion.

> of making inspections and/or tests of the Property.  Buyer and/or his
> inspectors/representatives shall have the right to perform a visual analysis of the
> condition of the Property, any reasonably accessible installed components, the
> operation of the Property's systems, including any controls normally operated by
> Seller including the following components: heating systems, cooling systems,
> electrical systems, plumbing systems, structural components, foundations, roof
> coverings, exterior and interior components, any other site aspects that affect the
> Property, and environmental issues.

(*Id.*)  The Jordans had ten days from the Agreement becoming final to conduct a home inspection

and to provide written notice, based on the results of the inspection, that they were terminating

the Agreement; that they were accepting the house in its present condition; or that they were

requesting repairs.  (*Id.* at 18.)

As part of the sale process, the parties also signed a property condition disclosure

statement.  (*Id.* at 26–30.)  Several provisions in the disclosure statement are relevant to the

pending motion.  At the top of the first page, Pritchard disclosed that he acquired the Harrison

Pike property on November 15, 2006.  (*Id.* at 26.)  In the first numbered paragraph on the first

page, Pritchard had to "disclose all known material defects and must answer the questions on the

Disclosure form in good faith to the best of the seller's knowledge as of the Disclosure date."

(*Id.*)  In Section B, Pritchard checked the boxes indicating that he was not aware of any roof

defects but was aware of basement defects.  (*Id.* at 28.)  To supplement the checked box about

the basement, Pritchard added the comment that "basement will get minor water intrusion during

heavy extended rainfall, pump is installed to dispose of water."  (*Id.*)  In Section C of the

disclosure statement, Pritchard checked that he was not aware of potential environmental hazards

at the house including asbestos and mold.  (*Id.*)  Pritchard further checked that he was not aware

of room additions or structural modifications that either were made without necessary permits or

were not in compliance with building codes.  (*Id.*)  Pritchard did disclose problems with

4

"flooding, drainage, or other interior water intrusions." (*Id.* at 29.)  For these disclosures,

Pritchard added the comment that the "basement will get minor water intrusion during heavy

extended rainfall, pump is installed to dispose of water." (*Id.*)

Problems with the Harrison Pike property arose just a few months after the sale closed.

On or about November 14, 2018, according to the Jordans, water entered the interior of the house

through leaks in the roof.  A roofing contractor inspected the roof and found patches suggesting

attempts at repair, while the Jordans found a can of roof sealant hidden in the basement.  The

roofing contractor estimated that repairing the roof would cost about $10,500.  Not long after the

incident with the roof leaks, the Jordans discovered mold and asbestos in the house.  "After the

water entry, Plaintiffs recalled the distinct presence of candles and perfume in The Property prior

to their purchase of the Property."  (Doc. No. 3 at 7.)  The Jordans received estimates totaling

about $43,000 for full mold and asbestos remediation.  Additionally, around February 2020 the

Jordans found a "newly discovered area" of the house that they described in their first amended

complaint as follows:

> Upon reasonable information and belief, between 1998 and 2002,
> Defendant built or hired agents to build an addition onto The Property.  This
> construction occurred after Defendant purchased The Property from his father,
> which evidences Defendant's knowledge of concealed, material defects.  During
> the construction of said addition, a portion of the crawl space was made
> inaccessible by the builder or agent of Defendant.  After the purchase, Plaintiffs
> were able to remove a part of a cinder block wall in the basement and discovered
> that work had been performed on The Property without pulling construction
> permits.  Plaintiff Nathanael Jordan obtained access to this inaccessible portion of
> The Property and saw that a load bearing, untreated support beam of The Property
> was rotten and structurally compromised.  Upon reasonable information and
> belief, the prior work did not comply with building codes.  Plaintiff Nathanael
> Jordan also discovered multiple two-by-four boards nailed to the subject floor
> joist(s) with framing nails.  Upon reasonable information and belief, the use of the
> two-by-fours in this manner does not meet building code requirements and
> evidence additional material defects with The Property that Defendant knew about

5

and willfully failed to disclose.  In addition to the deterioration of the floor beams,
which Plaintiffs contributes to water intrusion due to the aforementioned roof
defects, Plaintiff Nathanael Jordan also discovered a substantial amount of mold
in this newly discovered area of The Property.

(*Id.* at 8–9.)

The Jordans began their efforts to seek redress in state court.  On October 31, 2019, the

Jordans sued Pritchard in Bradley County Circuit Court.  The Court does not have a copy of the

original state-court complaint, but in the first amended state-court complaint, dated July 30,

2020, the Jordans recited the same facts that the Court summarized above and asserted four

causes of action: fraudulent misrepresentation and concealment; negligent misrepresentation; a

violation of the statutory requirement in Tenn. Code Ann. § 66-5-201 to make disclosures

honestly and in good faith; and breach of contract, specifically the property condition disclosure

statement.  (Doc. No. 3-1 at 1–11.)  When the Jordans became aware of Pritchard's bankruptcy

proceedings, they filed a motion for relief from the automatic stay on October 2, 2020.  The

Court granted the motion on October 27, 2020.  (Main Case Doc. No. 48.)  At oral argument, the

Jordans advised the Court that the state-court case has been stayed pending the resolution of this

adversary proceeding.  The Jordans at oral argument also stated their preference to try the

substantive issues of their state-court case here, though they currently "do not consent to the

entry of a final order or judgment in this cause."  (Doc. No. 13 at 1.)

A brief history of Pritchard's marital and bankruptcy proceedings is necessary to

understand why the Jordans do not want Pritchard to receive a discharge and why Pritchard

believes that some of the Jordans' allegations of fraud are without merit.  From information in

the record and gathered at oral argument, Pritchard's second ex-wife, Dana Lynnette Cheatham

("Dana"), was the sole owner, prior to 2019, of a house located at 935 Eldredge Circle NW in

Cleveland, Tennessee.  After marrying Pritchard on June 15, 2019,[3] and prior to any bankruptcy

filings, Dana changed the deed and created a joint tenancy in the entirety for the Eldredge Circle

property.  Pritchard and Dana filed a voluntary Chapter 13 petition on December 20, 2019.

(Case No. 19-bk-15333-SDR (the "First Pritchard Case").)  In Part 4 of the statement of financial

affairs, Pritchard disclosed that he and Dana were going through divorce proceedings in state

court.  (First Pritchard Case, Doc. No. 1 at 47.)  Pritchard disclosed in the same section that the

Jordans' case from state court was pending.  (*Id.*)  Pritchard and Dana disclosed the Eldredge

Circle property in Schedule A/B.  As for unsecured creditors, even though the Jordans filed their

original complaint in state court on October 31, 2019, nearly two months before the Chapter 13

petition, Pritchard did not add the Jordans to the original Schedule E/F also filed on December

20, 2019.  On June 22, 2020, Pritchard executed a quitclaim deed that transferred his interest in

the Eldredge Circle property back to Dana, for $10, to make Dana the sole owner of the property

again.  The parties explained at oral argument that Pritchard still lives at the Eldredge Circle

property despite the transfer.  Only on August 4, 2020, after the execution of the quitclaim deed,

did Pritchard file an amended Schedule E/F that included the Jordans "for notice purposes only."

(First Pritchard Case, Doc. No. 36 at 10.)  The Jordans at that point were included in the creditor

matrix for the First Pritchard Case, and that inclusion first made them aware that Pritchard filed

for bankruptcy protection.  On December 11, 2020, Pritchard split his bankruptcy case from

Dana's following their divorce and converted his case to a case under Chapter 7, the Main Case

here.  In the Main Case, the Trustee filed a report of no distribution on February 3, 2021.  (Main

Case, Doc. No. 61.)

---

[3] The Court takes judicial notice of the marriage date based on publicly available records from the
Bradley County Clerk's Office.

The Jordans commenced this adversary proceeding by filing their original complaint on March 8, 2021 and their amended complaint as a matter of course on March 12, 2021. (Doc. No. 3.) In the amended complaint, the Jordans recited all of the procedural and substantive facts that the Court summarized above.

The amended complaint contains three causes of action. Count I is confusing because the Jordans refer to the wrong property. On the face of Count I, the Jordans accuse Pritchard of attempting to defraud creditors by transferring the Harrison Pike property within one year of the petition date of the First Pritchard Case. This accusation is objectively false because Pritchard sold the Harrison Pike property to the Jordans on August 13, 2018, and the First Pritchard Case was filed on December 20, 2019. As Pritchard has noted, the accusation also makes no sense because "it would be impossible for [him] to have intended to defraud Plaintiffs of the value of the property if he sold the property directly to the Plaintiffs." (Doc. No. 9 at 3–4.) Instead, Pritchard has suggested that the Jordans intended to refer to the Eldredge Circle property in Count I. The Jordans implicitly have agreed that they made a typographical error in Count I; their response to the motion to dismiss refers only to the Eldredge Circle property when defending Count I. (Doc. No. 13 at 6–7.) Accordingly, the Court will construe Count I of the amended complaint to allege that Pritchard should be ineligible for discharge under 11 U.S.C. § 727(a)(2)(A) based on the chronology of events, summarized above, involving the Eldredge Circle property. In Count II, the Jordans cite the post-petition transfer of Pritchard's interest in the Eldredge Circle property, through the June 22, 2020 quitclaim deed, as the basis of a declaration that Pritchard should not receive a discharge because he transferred property of the estate post-petition, with intent to hinder, delay, or defraud a creditor under 11 U.S.C.

8

§ 727(a)(2)(B).  In Count III, the Jordans cite all of the problems that they discovered with the

Harrison Pike property and accuse Pritchard of fraudulent concealment.  To that extent, Count III

is a recapitulation of the state-court litigation.  The Jordans in Count III also accuse Pritchard of

a voidable transfer under Section 727(a)(2)(B) for the 2020 quitclaim deed that transferred his

interest in the Eldredge Circle property.  Through Count III, the Jordans seek damages of

$100,000; a declaration under 11 U.S.C. § 523(a)(2)(A) that their damages are not subject to

discharge because of Pritchard's conduct; and an avoidance of the 2020 quitclaim deed, which

they believe would make an additional asset available to unsecured creditors.

Pritchard filed the pending motion to dismiss on April 15, 2021.  Pritchard seeks

dismissal of the first amended complaint in its entirety.  With respect to Count I, Pritchard argues

that the Jordans have failed to plead that he transferred, removed, destroyed, mutilated, or

concealed any of his property within one year before the date of the filing of the petition in the

First Pritchard Case, meaning that Section 727(a)(2)(A) cannot apply and that Count I fails.

Section 727(a)(2)(A) does not apply, according to Pritchard, for the additional reason that the

Trustee's filing of the report of no distribution "essentially shows that actual intent to delay or

defraud creditors is simply not present."  (Doc. No.  9 at 4.)

Next, Pritchard argues that Section 727(a)(2)(B) does not apply here, and that Count II

fails.  Pritchard cites several cases, including *In re Keeney*, 227 F.3d 679 (6th Cir. 2000), to

emphasize that denial of discharge under Section 727(a)(2)(B) requires an actual and subjective

intent to defraud a creditor.  "Here, however, no fraudulent statements have been made or

alleged, no undisclosed transfers have occurred or were alleged, and no false oaths have been

made or alleged.  In fact, the only statements in support of Plaintiffs' claims are that Defendant

transferred or removed his property from the estate with the intent to defraud creditors." (Doc.

No. 9 at 6.)  In that sense, Pritchard considers the Jordans' accusations to be wholly conclusory.

Additionally, Pritchard argues that he could not have defrauded the Jordans under the

circumstances here because he

> has already made clear that the attempted transfer of his interest in the property
> was due to a falling out of Defendant's marriage and expected divorce.  This
> transfer was made in expectation for the splitting of the parties.  Similarly, the
> Defendant's mere Tenants by the Entirety interest in the property, for which he
> did not and does not pay for, is not sufficient enough to warrant a showing of
> intent to defraud a creditors by transferring property.  If, for example, the
> Defendant were to split up with his wife, he would have a difficult time
> attempting to prove any financial interest in the property to begin with.  As such,
> if the Defendant himself could not obtain any meaningful financial interest, there
> is no way Defendant could have intended to defraud anyone else by the transfer.

(*Id.* at 6.)

Finally, Pritchard argues for dismissal of Count III on the basis that the Jordans have not

sufficiently pled reliance on specific misrepresentations:

> [N]othing in the record supports the argument that Defendant obtained money
> through a material misrepresentation.  Similarly, nothing in the record shows that
> Defendant intended to defraud Plaintiffs.  In fact, Plaintiffs agree that a property
> inspection was done on the sold property prior to the sale.  Plaintiffs merely assert
> that "roof sealant" was found in the basement of the home along with a backwards
> roof shingle and the smell of candles.  Not even the most favorable interpretation
> of these facts would provide a basis for Plaintiffs to show actual fraud with intent
> to deceive under the four (4) pronged analysis.  Similarly, no facts have been
> pleaded to prove it was plausible that the Plaintiffs relied on misrepresentations of
> Defendant.  In fact, the existence of a property inspection is telling in and of itself
> that Plaintiffs have not plausibly pleaded that they relied on any alleged
> misrepresentations.

(*Id.* at 8.)

The Jordans oppose the pending motion in all respects.  With respect to Counts I and II,

which they address together, the Jordans assert that they have pled all of the elements needed

under Section 727(a)(2) and *Keeney* to establish fraud.  The Jordans argue that the quitclaim

10

deed of June 22, 2020 occurred after the commencement of the First Pritchard Case, for purposes

of Section 727(a)(2)(B), and within a year before the conversion to Chapter 7 that began the

Main Case, for purposes of Section 727(a)(2)(A).  As for indicia of fraud, the Jordans argue that

Pritchard "conveyed his interest in the property to his Wife Dana Lynnette Pritchard (a.k.a. Dana

Cheatham-Pritchard) to avoid liability to Plaintiffs due to [Pritchard's] fraud as alleged in the

state court action."  (Doc. No. 13 at 6.)  The Jordans further emphasize that the transfer of June

22, 2020 occurred for only $10 and that Pritchard made the transfer without notifying them or

the Court.  (*Id.* at 7.)  Finally, the Jordans note that Pritchard "did not file for bankruptcy until

*after* [they] filed their state court action concerning [his] alleged fraud, and [Pritchard] did not

notify [them] of [his] Chapter 13 bankruptcy or include [them] as creditors in the initial petition

despite [their] filing the state court action merely two (2) months before [he] sought bankruptcy

protection."  (*Id.*)  In the Jordans' view, Counts I and II thus would survive.

In Count III, the Jordans summarize all of the deceptive conduct by Pritchard on which

they reasonably relied and that they described in their pleadings both in state court and here:

> Defendant filed for bankruptcy less than two (2) months after Plaintiffs
> filed their state court fraud action against him, which shows both suspicious
> timing and Defendant's lack of financial health at the time of the transaction.
> Plaintiffs' reasonable reliance on Defendant's misrepresentations in selling 1301
> Harrison Pike to Plaintiffs is evident through Defendant's false statements and
> omissions in the Tennessee Residential Real Property Disclosure form wherein
> Defendant misrepresented how long he owned the property by approximately
> eight (8) years and intentionally excluded his knowledge of prior material defects
> with the property to induce Plaintiffs to pay him money.  [Doc. 3, Amended
> Complaint at ¶¶ 35-36, 38, 41, 50-59, 80, 83-86, 89-96; Exhibit 1 at Exhibit 3
> (copy of Tennessee Residential Property Disclosure)].  Plaintiffs reasonably relied
> on Defendant's statements within the legal disclosure form and other transactional
> documents before purchasing the property.  In addition to the circumstantial
> evidence of fraud alluded to within Defendant's motion (roof sealant, roof
> patching, hidden mold, etc.), Defendant had an addition to the property sealed off
> by a cinder block wall, and after Plaintiffs' purchase, Plaintiffs were able to

remove a piece of the wall and discovered that work performed on the home
during Defendant's ownership was substandard and not up-to-code (improper
structural foundation, mold, etc.)—all which Defendant knew about prior to the
transaction. [Doc. 3, Amended Complaint at ¶¶ 60, 78]. Defendant knowingly
misrepresented the condition of the property through trick and artifice to sell the
property and obtain money from Plaintiffs. [Doc. 3, Amended Complaint at ¶¶
86-87]. Defendant's Motion to Dismiss cherry-picks factual allegations of fraud
within Plaintiff's Complaint without providing the entire picture of the
transaction, and Defendant's conduct after the transaction, which included filing
for bankruptcy after Plaintiffs filed the state court action for Defendant's fraud.
Also, to note, the state court action was set for trial before the filing of the present
adversary complaint and before the deadline to file an objection to Defendant's
proposed Chapter 7 plan.

(Doc. No. 13 at 9–10.)

## III.    DISCUSSION

### A.    *Jurisdiction and Consent to Final Orders*

As a preliminary matter, the Court needs to address a statement from the Jordans, in their

response to Pritchard's motion, that they do not consent to the entry of a final order or judgment.

(Doc. No. 13 at 1.)  *See also* Fed. R. Bankr. P. 7012(b).  The statement is important because it

implicates jurisdiction, which the Court may review *sua sponte.  See, e.g., Franzel v. Kerr Mfg.*

*Co.*, 959 F.2d 628, 629 (6th Cir. 1992) (citations omitted).  At the same time, though, the

statement is contrary to the Jordans' course of conduct in this adversary proceeding so far.  The

entire adversary proceeding is a request for the fundamental bankruptcy exercise of determining

exceptions to discharge.  *See In re Deitz*, 760 F.3d 1038, 1050 (9th Cir. 2014) (finding that *Stern*

*v. Marshall*, 564 U.S. 462 (2011), did not change the principle "that a bankruptcy court may

liquidate a debt and enter a final judgment in conjunction with finding the debt

nondischargeable"); *In re Carroll*, 464 B.R. 293, 312 (Bankr. N.D. Tex. 2011) ("Determining the

scope of the debtor's discharge is a fundamental part of the bankruptcy process.").  The Jordans,

in paragraphs 3 and 4 of their amended complaint, expressly state that the Court has subject-

12

matter jurisdiction and that the complaint is a core proceeding.  Toward the end of the amended

complaint, the Jordans demand a judgment from this Court of $100,000 against Prichard, a

judgment that would not be possible without consent to final judgment.  Finally, the Jordans

have requested that this Court deny the pending motion, which is a dispositive motion.  The

Jordans' course of conduct indicates that they willingly have submitted themselves to

fundamental bankruptcy adjudications that can proceed without an express statement of consent.

In the alternative, the contradiction between the Jordans' course of conduct and their

response to the pending motion causes the Court to consider the issue of implied consent.

"Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be

express.  Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent; it states only

that a bankruptcy court must obtain 'the consent'—consent *simpliciter*—'of all parties to the

proceeding' before hearing and determining a non-core claim."  *Wellness Int'l*, 575 U.S. at 683–

84.  "The implied consent standard articulated in [*Roell v. Withrow*, 538 U.S. 580 (2003)]

supplies the appropriate rule for adjudications by bankruptcy courts under § 157.  Applied in the

bankruptcy context, that standard possesses the same pragmatic virtues—increasing judicial

efficiency and checking gamesmanship—that motivated our adoption of it for consent-based

adjudications by magistrate judges."  *Id.* at 684 (citation omitted).  Under *Roell*, the rule for

implied consent requires that "the litigant or counsel was made aware of the need for consent and

the right to refuse it, and still voluntarily appeared to try the case" before the non-Article III

judge.  538 U.S. at 590.  Some kind of voluntary, affirmative conduct is critical to a finding of

implied consent, to avoid a scenario in which "a party seeks affirmative relief from the

bankruptcy court believing it might win and then cries foul over the court's entry of final

judgment when it loses." *True Traditions, LC v. Wu*, 552 B.R. 826, 837 (N.D. Cal. 2015) (citing

*In re Bellingham Ins. Agency, Inc.*, 702 F.3d 553, 570 (9th Cir. 2012) (implied consent found

where a party "fully litigated the fraudulent conveyance action before the bankruptcy court and

the district court"); *cf. United States v. B & D Vending, Inc.*, 398 F.3d 728, 732 (6th Cir. 2004)

(finding implied consent to a Magistrate Judge); *Pullano v. Old Carco Liquidation Tr.*, No. 05-

CV-135A, 2011 WL 4498383, at *4 (W.D.N.Y. Sept. 27, 2011) (same).

 Here, the record contains several signs that the Jordans have given implicit consent to

final judgment before this Court.  The Jordans received relief from the automatic stay

specifically to pursue their litigation in state court.  (Main Case Doc. No. 48.)  Relief from the

automatic stay means that the Jordans had, and still have, the option to seek a judgment against

Prichard and another court with full trial jurisdiction.  Nonetheless, the Jordans chose to ask this

Court to "[e]nter a judgment against the Defendant in the amount of $100,000.00" (Doc. No. 3 at

15)—an act that would not be possible without consent to final judgment.  *Cf. In re Jordan*, 543

B.R. 878, 882 (Bankr. C.D. Ill. 2016) ("Here, the Court finds that both the Trustee and JPMorgan

have impliedly consented to this Court's entry of a final order.  The Trustee filed his complaint

raising no questions regarding the Court's constitutional authority to enter the final order he

requested in the complaint.  Likewise, JPMorgan's motion to dismiss asks the Court to enter a

final order of dismissal."); *In re Carter*, 506 B.R. 83, 88 (Bankr. D. Ariz. 2014) ("Indeed, the

*Stern* objection may be waived any time the objector merely acquiesces in the Bankruptcy Court

hearing any aspect of a case in a posture that may lead to a substantive ruling.").  The Jordans

participated in briefing and oral argument without wavering in their request for a dispositive

damages award.  Only in their objection to the pending motion did the Jordans add a single

sentence stating that they do not consent to final judgment (Doc. No. 13 at 1); within that same

sentence, the Jordans asked the Court to deny the pending motion—a dispositive motion—

without contending that the Court could only make recommendations to the District Court if it

agreed that the Jordans could withdraw their consent.  *Cf. In re Fisher Island Invs., Inc.*, 778

F.3d 1172, 1192 (11th Cir. 2015) ("The Zeltser Group also filed a motion for partial summary

judgment in its favor on the ownership issue from the bankruptcy court but then a short time later

inexplicably contested the bankruptcy court's authority to decide it.").  Under the circumstances

of this proceeding, the Court finds implicit consent to final judgment from the Jordans in

addition to the express statements in the complaint.

### B.  *Motions to Dismiss Generally*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not

akin to a probability requirement, but it asks for more than a sheer possibility that a defendant

has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a

defendant's liability, it stops short of the line between possibility and plausibility of entitlement

to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations

omitted).  "We are required to construe the complaint in the light most favorable to the plaintiff,

accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.

Nevertheless, we need not accept as true any conclusory legal allegations that do not include

specific facts necessary to establish the cause of action.  The plaintiff's complaint instead must

contain either direct or inferential allegations with respect to all material elements necessary to

15

sustain a recovery under some viable legal theory." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396

(6th Cir. 2016) (internal quotation marks and citations omitted).

The Court also has to review the principles governing the documents attached to the

Jordans' first amended complaint.  "In addition to the allegations in the complaint, the court may

also consider other materials that are integral to the complaint, are public records, or are

otherwise appropriate for the taking of judicial notice." *Wyser-Pratte Mgmt. Co. v. Telxon

Corp.*, 413 F.3d 553, 560 (6th Cir. 2005) (citations omitted).  "While documents integral to the

complaint may be relied upon, even if they are not attached or incorporated by reference, it must

also be clear that there exist no material disputed issues of fact regarding the relevance of the

document." *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 797 (6th Cir. 2012)

(internal quotation marks and citation omitted).  Applying these principles, the Court has

considered several documents in the record.  The Jordans attached to their first amended

complaint a copy of their pleading from state court.  The Court has reviewed the state-court

pleading for the limited purposes of confirming the existence of the state-court litigation and

comparing the allegations in state court to the allegations here.  The Jordans further attached

copies of the Agreement, the warranty deed (also provided in more legible form and with

signatures in Pritchard's motion papers), the property condition disclosure statement, and the

quitclaim deed.  All of these documents are central to the Jordans' allegations that Pritchard

made improper transfers of property and hid problems with the Harrison Pike property that he

should have disclosed thoroughly.  The Court has reviewed the documents accordingly.  In

contrast, the Court has disregarded certain photographs, attached to the amended complaint, that

purportedly show some of the problems with the Harrison Pike property that the Jordans have

16

described in their amended complaint.  As a practical matter, the copies of the photographs in the

record are of such poor quality that the Court cannot discern what is depicted.  In any event,

photographs of the Harrison Pike property might eventually be probative of the Jordans'

allegations, but courts do not assess the weight of the evidence on a motion to dismiss.  *See*

*Thomas v. Noder-Love*, 621 F. App'x 825, 830 (6th Cir. 2015) (unpublished opinion) (district

court erred in making a substantive evaluation of photographs attached to a motion to dismiss,

because "[t]he court may not dismiss a complaint for failure to state a claim based on a judge's

disbelief of a complaint's factual allegations") (internal quotation marks and citation omitted).

### C.  Dischargeability Under Section 727(a)(2)(A) (Count I)

The Court's consideration of Count I of the amended complaint will be brief.  Under 11

U.S.C. § 727(a)(2)(A), a court must grant a discharge at the end of a Chapter 7 case unless "the

debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with

custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed,

or has permitted to be transferred, removed, destroyed, mutilated, or concealed property of the

debtor, within one year before the date of the filing of the petition."  "This section encompasses

two elements: 1) a disposition of property, such as concealment, and 2) a subjective intent on the

debtor's part to hinder, delay or defraud a creditor through the act disposing of the property."  *In*

*re Keeney*, 227 F.3d 679, 683 (6th Cir. 2000) (internal quotation marks and citation omitted).

Here, the Main Case began with the filing of the petition in the First Pritchard Case on December

20, 2019.  Even though Pritchard's bankruptcy was split from Dana's and converted from

Chapter 13 to Chapter 7, the December 20, 2019 date controls for purposes of Section

727(a)(2)(A) because "a bankruptcy case can statutorily commence only one time—upon the

filing of the 'petition.'  That is, there is only one 'petition' per bankruptcy case."  *In re Carter*,

260 B.R. 130, 133 (Bankr. W.D. Tenn. 2001) (citations omitted); *see also Harris v. Viegelahn*, 575 U.S. 510, 515 (2015) ("Conversion from Chapter 13 to Chapter 7 does not commence a new bankruptcy case.  The existing case continues along another track, Chapter 7 instead of Chapter 13, without effecting a change in the date of the filing of the petition.") (internal quotation and editorial marks and citation omitted); *In re Walter*, 45 F.3d 1023, 1028 (6th Cir. 1995) ("The language of [11 U.S.C. § 348(a)] makes clear that the conversion relates back to the original date of filing the petition.") (citation omitted).  The chronology of events involving the parties shows that Pritchard did not transfer any of his property within the year preceding the filing of the petition in the First Pritchard Case.  The sale of the Harrison Pike property from Pritchard to the Jordans was recorded on August 13, 2018.  Sometime after her marriage to Pritchard on June 15, 2019, Dana transferred an interest in the Eldridge Circle property to Pritchard.  He did not convey any interest back to her prior to the bankruptcy filing.  There are no other transactions and no other properties in this case that could satisfy the first element under Section 727(a)(2)(A) as set forth by *Keeney*.  The Court thus finds that Count I must fail as a matter of law without needing to address the second element under Section 727(a)(2)(A).  Accordingly, the Court grants Pritchard's motion with respect to Count I.

### D.  Dischargeability Under Section 727(a)(2)(B) (Count II)

The Court turns next to Count II and the allegations concerning the Eldredge Circle property.  Under 11 U.S.C. § 727(a)(2)(B), a court must grant a discharge at the end of a Chapter 7 case unless "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed property of the estate, after the date of the filing of the petition."

> Whereas § 727(a)(2)(A) encompasses the Debtor's pre-petition acts, his
> post-petition actions fall within the scope of § 727(a)(2)(B), which requires proof
> that the Debtor (1) transferred, removed, destroyed, mutilated, or concealed
> property of his bankruptcy estate, (2) with actual intent to hinder, delay, or
> defraud a creditor or an officer of the estate, (3) after the Petition Date.  The intent
> of § 727(a)(2)(B) is to deny discharge to a debtor who fails to disclose
> transactions regarding his assets subsequent to filing his petition in bankruptcy.
> Once a creditor establishes its case, the burden shifts to the debtor to provide the
> court with a convincing explanation for the [transfer, removal, destruction,
> mutilation, or] concealment.  As with § 727(a)(2)(A), the Plaintiff may establish
> the Debtor's intent under § 727(a)(2)(B) through evidence of his conduct.

*In re Babb*, 358 B.R. 343, 352 (Bankr. E.D. Tenn. 2006) (Stair, *J.*) (internal quotation and

editorial marks and citations omitted).  Creditors relying on circumstantial evidence of conduct

to establish intent frequently point to the following non-exhaustive factors:

> (i) the lack of adequate consideration for the transfer; (ii) the family, friendship,
> or close relationship between the parties; (iii) the retention of possession, benefit,
> or use of the property in question by the debtor; (iv) the financial condition of the
> party sought to be charged prior to and after the transaction in question; (v) the
> conveyance of all of the debtor's property; (vi) the secrecy of the conveyance;
> (vii) the existence or cumulative effect of a pattern or series of transactions or
> course of conduct after the incurring debt, onset of financial difficulties, or
> pendency or threat of suit by creditors; and (viii) the general chronology of the
> events and transactions under inquiry.

*In re Montgomery*, No. 04 34707, 2007 WL 625196, at *2 (Bankr. E.D. Tenn. Feb. 27, 2007)

(Stair, *J.*) (citation omitted).  The Court is mindful, however, that cases such as *Montgomery*

contain an assessment of intent that occurred after a trial.  Prior to trial, any assessment of intent

must be limited to reviewing the plausibility of allegations, in the instance of a motion to

dismiss; or to reviewing genuine disputes of material fact, in the instance of a motion for

summary judgment.  *See, e.g., In re Swegan*, 383 B.R. 646, 655 (B.A.P. 6th Cir. 2008) ("Courts

must be cautious in determining issues that involve a person's state of mind when deciding a

case at the summary judgment stage."); *McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir. 1979)

("While it may be possible in some cases to support such an ultimate fact [of a prison official's

19

state of mind] with clear evidence which can be averred in the complaint, we cannot presume that this will often be the case.") (citations omitted); *Collins v. Mfrs. Hanover Tr. Co.*, 542 F. Supp. 663, 671 (S.D.N.Y. 1982) ("[T]he defendants' state of mind [in an employment-discrimination case] must be determined after careful evaluation of all the facts, and thus does not present a question appropriate for resolution on a motion to dismiss. Suffice it to say that the recitation of facts in the complaint could provide the basis for an inference of willfulness.") (citations omitted).

Here, the Jordans have pled enough circumstantial factors to allow Count II to proceed to discovery. The Jordans have documented that Pritchard signed a quitclaim deed on June 22, 2020 transferring his interest in the Eldredge Circle property to his then-wife Dana for $10. (Doc. No. 3-2 at 1.) The transfer came before Pritchard's conversion to Chapter 7 but after his joint Chapter 13 case with Dana was filed. The parties clarified at oral argument that Dana was the sole owner of the Eldredge Circle property before marrying Pritchard and created a tenancy in the entirety after marrying him. The parties explained further at oral argument that Pritchard still lives at the Eldredge Circle property. "The transfer of property by the debtor to his spouse while insolvent, while retaining the use and enjoyment of the property, is a classic badge of fraud." *In re Kaiser*, 722 F.2d 1574, 1583 (2d Cir. 1983) (citation omitted), *cited in In re Dearmond*, No. 14-50106 MPP, 2017 WL 4220396, at *6 (Bankr. E.D. Tenn. Sept. 21, 2017) (Parsons, *C.J.*); *cf. In re Carl*, 517 B.R. 53, 64 (Bankr. N.D.N.Y. 2014) (discharge denied because, *inter alia*, debtor was insolvent when he transferred a substantial equity interest in property to his wife for ten dollars). Viewing the situation in the light most favorable to the Jordans, as is required under Federal Civil Rule 12, the Jordans plausibly have pled a transfer

20

that looks suspicious: For only token consideration, Pritchard transferred a property interest to a family member during a pending bankruptcy case—thereby reversing a transfer done only within the previous few years—while still using the property. There is some question as to what interest Pritchard thought that he transferred. Under Tennessee law, Pritchard could have transferred only a survivorship interest to a third party without Dana's consent. *See In re Arango*, 992 F.2d 611, 613 (6th Cir. 1993) (citations omitted). In this instance, though, Pritchard made the transfer to his then-wife and not to a third party. Transferring to Dana made the transaction more consequential, because Pritchard would have made her "the owner in fee simple absolute, just as she would have done had he predeceased her. He thereby extinguished any right of survivorship which he might have had, together with his right of joint control, enjoyment and possession." *Barry v. Woods*, 594 S.W.2d 687, 689 (Tenn. 1980). The Court makes no findings at this time about the validity of the transfer or about Pritchard's intentions. For now, the Court concludes only that Pritchard appears to have held some kind of valuable interest in the Eldredge Circle property when his bankruptcy commenced. He attempted to transfer that interest under circumstances that are enough to establish a legally cognizable claim under Section 727(a)(2)(B) that should survive Federal Civil Rule 12 dismissal. Accordingly, the Court thus denies Pritchard's motion to dismiss Count II.

### E.  Discharge of Debt Under Section 523(a)(2)(A) (Count III)

Finally, the Court turns to Count III of the amended complaint and the allegations about disclosure of defects in the Harrison Pike property. Under 11 U.S.C. § 523(a)(2)(A), a discharge in a Chapter 7 case will not extend to any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

21

To the extent that the exception to discharge would rest on a misrepresentation, "a creditor must prove the following elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.  In order to except a debt from discharge, a creditor must prove each of these elements by a preponderance of the evidence.  Further, exceptions to discharge are to be strictly construed against the creditor." *In re Rembert*, 141 F.3d 277, 280–81 (6th Cir. 1998) (citations omitted).  "Although a material misrepresentation can be defined as substantial inaccuracies of the type which would generally affect a lender's or guarantor's decision, a misrepresentation is not material if the creditor knows it is false or possesses information sufficient to call the representation into question. Additionally, intent to deceive includes consideration of whether the totality of the circumstances presents a picture of deceptive conduct by the debtor which indicates an intent to deceive the creditor. Also a direct link must exist between the alleged fraud and the creation of the debt." *In re Nikirk*, No. 3:17-BK-30140-SHB, 2020 WL 1696096, at *5 (Bankr. E.D. Tenn. Apr. 3, 2020) (Bauknight, *J.*) (internal quotation and editorial marks and citations omitted); *see also In re Carlton Mark Vollberg*, No. 1:16-BK-12276-SDR, 2017 WL 2787600, at *3 (Bankr. E.D. Tenn. June 27, 2017) ("Circumstantial evidence of fraud is sufficient, but the court must have some evidence of the deceit or scheme to find fraudulent intent.") (citing *In re Fox*, 370 B.R. 104, 116–17 (B.A.P. 6th Cir. 2007)).  An exception to discharge based on actual fraud, however, does not necessarily require any misrepresentation.  "'Actual fraud' has two parts: actual and fraud. The word 'actual' has a simple meaning in the context of common-law fraud: It denotes any

22

fraud that involves moral turpitude or intentional wrong. 'Actual' fraud stands in contrast to 'implied' fraud or fraud 'in law,' which describe acts of deception that may exist without the imputation of bad faith or immorality. Thus, anything that counts as 'fraud' and is done with wrongful intent is 'actual fraud.'" *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 356, 136 S. Ct. 1581, 1586 (2016) (term "actual fraud" includes forms of fraud, like a fraudulent conveyance, that can be effected without a false representation).

Here, the Jordans plausibly have pled at least some events that could constitute material misrepresentations or actual fraud. In the property condition disclosure statement, Pritchard unequivocally denied any defects or malfunctions in the roof of the Harrison Pike property, which contradicts the Jordans' discovery of roof patches, badly installed shingles, and water entry. For Federal Civil Rule 12 purposes, the Jordans get the benefit of the doubt as to whether Pritchard understated the "minor water intrusion" that led to mold in the basement. Through another checkbox in the property condition disclosure statement, Pritchard unequivocally denied the presence of mold or asbestos. Pritchard further denied any awareness of room additions or structural modifications that were made without necessary permits or without compliance with building codes. This denial contradicts the Jordans' assertion of structural work that was "not up to code" and compromised by rot. *Cf. In re George*, 485 B.R. 478, 2013 WL 135274, at *2 (B.A.P. 6th Cir. 2013) (table case) (judgment debt of $171,000 exempted from discharge under Section 523(a)(2)(A), where sellers of property fraudulently denied structural defects in a property disclosure statement). In short, Count III appears to be strongest where the Jordans have tethered it to the property condition disclosure statement. The Jordans successfully have pled discrepancies between assertions in the statement and their own experiences after the sale

23

closed.  The parties will have to use discovery to sort out the issue of reasonable reliance, given

that the Jordans did arrange for a home inspection.  *Compare* Tenn. Code Ann. § 66-5-201 ("The

disclosure statement referenced in § 66-5-202 is not a warranty of any kind by a seller and is not

a substitute for inspections either by the individual purchasers or by a professional home

inspector."); *with Orndorff v. Calahan*, No. M200702060COAR3CV, 2008 WL 4613546, at \*5

(Tenn. Ct. App. Oct. 9, 2008) ("If the disclosure form was to have no significance, there would

be no purpose in requiring it.").  The Jordans also will have to account for the provisions in the

sales contract in which an appraisal would occur and in which they waived their "right to require

repairs or alterations purely to meet current building codes."  (Doc. No. 3-1 at 17.)  The waiver

could mean that the Jordans placed extra reliance on Pritchard's denial of problems with permits

and building codes; it also could mean that any problems with building codes that could have

been uncovered in a home inspection should have affected their ultimate decision to proceed

with the purchase.  Nonetheless, the Jordans plausibly could have been materially misled, in a

way that created actual damages, by assertions and omissions in a disclosure form required under

state law.  *See Orndorff*, 2008 WL 4613546, at \*6 ("Finally, the [sellers] argue that reliance on

the disclosure form is not reasonable because the [buyers] had a home inspection done before

closing.  The inspection, however, did not cover structural issues or building code compliance.

The [buyers] did not have a more extensive inspection because they never had any indication or

reason to believe that there was any problem with the structure or with building code

compliance.  Under such circumstances, a home inspection does not relieve the [sellers] of

responsibility for their misrepresentations."); *see also Staggs v. Sells*, 86 S.W.3d 219, 224 (Tenn.

Ct. App. 2001) (plaintiff reasonably relied on property information in a sales contract despite

24

performing an inspection, because the flooding problem in question "was not readily

discoverable by visual inspection").

      Under these circumstances, the Court denies Pritchard's motion to dismiss Count III.

## IV.    CONCLUSION

      Pritchard made no transfer of property during the year before he filed for bankruptcy.

The Jordans, however, have made a plausible allegation that Pritchard transferred his interest in

the Eldredge Circle property to a family member after filing his petition and still lives there.  The

Jordans have made the additional plausible allegations that they relied to their detriment on a

property condition disclosure statement that contained intentional and material

misrepresentations; and that Pritchard acted in other ways that imply an intent to deceive.  For all

of the above reasons, the Court will grant Pritchard's motion to dismiss (Doc. No. 8) with respect

to Count I of the amended complaint and will deny it in all other respects.

      A separate order will follow.

# # #